John KIRSCHNER, George Kirschner, Martha Kirschner and J & G Central Auto Collision, Inc., d/b/a Central Auto Collision, Plaintiffs,

v.

The ZONING BOARD OF APPEALS OF the INCORPORATED VILLAGE OF VALLEY STREAM: and Edward DeLucie, Fred San Fanandre and Marvin Ronik, in their capacity as constituting Members of the Zoning Board of Appeals of the Incorporated Village of Valley Stream, Defendants.

No. CV 93–1764 (ADS).

United States District Court,
E.D. New York.

April 20, 1996.

Lysaght, Lysaght & Kramer, P.C. (John W. DeBlasio, of counsel), Lake Success, New York, for Plaintiffs.

Rivkin, Radler & Kremer (Kenneth A. Novikoff, of counsel), Uniondale, New York, for Defendants.

SPATT, District Judge:

Presently before the Court is the motion of the defendants, the Zoning Board of Appeals of the Incorporated Village of Valley Stream

(the "ZBA" or the "Board"), and three of its members, Edward DeLucie ("DeLucie"), Fred San Fanandre ("San Fanandre") and Marvin Ronik ("Ronik," collectively the "defendants"), for summary judgment dismissing the plaintiffs' fourth amended complaint. The plaintiffs, John Kirschner, George Kirschner, Martha Kirschner and J & G Central Auto Collision, Inc. d/b/a Central Auto Collision (the "plaintiffs"), allege that the defendants violated their equal protection rights when the ZBA voted to reevaluate and deny the plaintiffs a special use permit allowing them to expand the non-conforming zoning use of their auto body shop.

The plaintiffs originally filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging violation of their Free Speech, Due Process and Equal Protection rights under the First, Fifth and Fourteenth Amendments of the United States Constitution. This Court granted the defendants' motion for summary judgment dismissing the plaintiff's second amended complaint in its entirety on February 4, 1994. However, the Court also granted the plaintiffs leave to replead their equal protection claim. The plaintiffs filed a third amended complaint on February 28, 1994 which the Court dismissed on June 3, 1994 pursuant to Fed.R.Civ.P. 12(b)(6). Leave was again granted to replead. On October 21, 1994 the Court granted the defendants' motion for sanctions against the plaintiffs' attorneys for reasonable attorneys' fees and costs incurred in dismissing the third amended complaint. On June 7, 1994, the plaintiffs filed their fourth amended complaint again alleging a violation of their equal protection rights. The defendants move for summary judgment in their favor arguing that the plaintiffs are unable to maintain a their equal protection claim as a matter of law.

## I. BACKGROUND

The plaintiffs John, George, and Martha Kirschner own and operate an auto body shop, J & G Central Auto Collision, Inc. d/b/a Central Auto Collision, located at 1081 Rockaway Avenue, Valley Stream, New York. The area is zoned as C–1, and under the Village of Valley Stream's Zoning Code an auto body repair shop is not permitted in a C–1 district. However, because the auto body shop at issue pre-dated the enactment of the Village's old zoning code in 1952, the plaintiffs' predecessors in title were allowed to operate the auto body shop since 1952 as a legal non-conforming use.

In 1969, the ZBA granted the plaintiffs' predecessor in title a special permit to expand the existing non-conforming use by 3% of the total land area, increasing the size of the auto body shop from 890 square feet to 1080 square feet.

Beginning in 1985, the plaintiffs applied for a special permit to expand the size of the auto body shop. According to the plaintiffs, the expansion was sought in order to install up-to-date spray booths and other ventilating equipment, so as to ultimately allow all the auto body operations to be contained within a totally enclosed, ventilated structure. According to the defendants, the plaintiffs made four such applications.

The first application was made on August 28, 1985, and requested an expansion of 1,636 square feet. The application was made pursuant to then section 99–47 of the Village Code, which allowed for expansion of a non-conforming use, so long as the expansion did not exceed 25 percent of the land area occupied by the business. The ZBA held an evidentiary hearing on September 2, 1986 with respect to the application, at which the plaintiffs participated. At that hearing numerous Village citizens spoke in opposition to the plaintiffs' expansion of the auto body shop, including the defendant Edward DeLucie, who resided adjacent to the premises and presented a petition on behalf of 65 other neighbors living near the shop.

A week later the Nassau County Planning Commission ("NCPC") recommended disapproval of the application to expand the nonconforming use on the grounds that expansion would introduce commercial traffic to a residential street, and the parking and storage resulting from the additional automobile capacity would create a hazardous and unsightly condition. Because the NCPC disapproved the application, the ZBA could only approve the application by a supermajority (4 to 1) vote. The ZBA issued findings and

decisions rejecting the plaintiffs' application for expansion. One of the bases for the ZBA's rejection was that the proposed expansion of 1,636 square feet exceeded the 25 percent limit on non-conforming use expansion. The defendant Fred San Fanandre was a member of the ZBA at the time, and voted to deny the application.

The second application by the plaintiffs to expand the non-conforming use was made in 1988. A hearing with regard to this application was held on September 2, 1988. Once again, the NCPC recommended disapproval of the application, and for a second time, on September 27, 1988, the ZBA voted to reject the application. This time, however, the ZBA stated that the grounds for the rejection were that under section 99–47 of the Village Code, only one special permit allowing expansion of non-conforming use may be granted during the life of any non-conforming use. Since one such permit had been granted in 1969, no more special permits could be granted for the auto body shop.

In September 1990, the Village Board of Trustees adopted a New Zoning Code. The new section 99–2403 of the Village Code provided for a maximum expansion of a lawful existing non-conforming use of 25 percent. However, the new section 99–2505(A)(1)(a)(9) of the Village Code states, in relevant part, that:

In addition to the general standards for a special permit approval ... the [ZBA] may, as a condition of approval of any such use, establish any other additional standards, conditions and requirements, as it may deem necessary or appropriate to promote the public health, safety and welfare and to otherwise implement the intent of this local law. *The [ZBA] may modify the application of the general and specific standards prescribed in this local law as they apply for special permit approval on a case-by-case basis, in its sole judgment and at its discretion,* if it makes the following findings:

a) That the requirement is superfluous or in excess of what is necessary and adequate.

b) That alternate protections are provided to meet the general intent of the regulation.

c) That the modification of the requirement will not adversely affect the general health, safety or welfare of the public.

d) In modifying these requirements, the [ZBA] may impose other alternative requirements in order to achieve substantial justice. (emphasis added)

After the enactment of the new Village Code, the plaintiffs applied for a third time to have the non-conforming use expanded. A hearing was held on November 13, 1990. This time, however, on December 18, 1990, the ZBA voted 4 to 1 to grant the special permit. Again, the defendant San Fanandre voted to deny the permit. According to the ZBA's Findings and Decisions, the ZBA granted the special permit because it construed the new section 99–2505(A)(1)(a)(9) as giving the ZBA discretion to exceed the 25 percent non-conforming use expansion limitation. According to the plaintiffs, the ZBA's Findings recognized that Central Auto Collision was a viable profitable business which had been restricted from updating its equipment, a restriction which could be remedied by expanding the existing structure.

On January 24, 1991, the Village Attorney, Michael T. Hopkins, wrote a letter to the ZBA Chairperson addressing the ZBA's decision to construe the new ordinance so as to permit an expansion in excess of 25 percent. The Village Attorney stated in the letter that it was not the intent of the Village Trustees in enacting section 99–2505 to allow the ZBA to waive the 25 percent limitation on the maximum allowable expansion for a non-conforming use, but rather, to keep the 25 percent figure as a jurisdictional limitation upon the ZBA.

On March 19, 1991, the Mayor of the Village was defeated for re-election, and the Village Attorney was replaced.

On April 24, 1991, the ZBA met to discuss the letter from the former Village Attorney. After considering the letter, the ZBA voted 3 to 2 to reopen the plaintiffs' case. Of the five ZBA members, the three defendants, Edward DeLucie, Fred San Fanandre and Mar-

vin Ronik, voted to re-open. Two of these three members, Mr. DeLucie, the new chairperson, and Mr. Ronik, were new members. Mr. San Fanandre had voted consistently in the past to deny the special permit. The plaintiffs also allege that the April 24, 1991 meeting was an "emergency meeting" at which the ZBA acted beyond its authority in deciding to reconsider and reopen the decision to grant the special permit.

For a fourth time, a hearing was held by the ZBA on May 14, 1991 to consider the plaintiffs' application to expand the non-conforming use. On June 23, 1991, the ZBA issued its Findings and Decision denying the special use permit. In addition to finding that the prior ZBA decision to grant a non-conforming expansion of greater than 25 percent exceeded its jurisdiction, the ZBA also found that such an expansion presented health and safety problems to the surrounding area.

The plaintiffs then challenged the ZBA's reversal of its prior decision in an Article 78 proceeding before the Supreme Court, Nassau County (Judge Levitt), claiming fraud, estoppel, and the illegality of the ZBA action. The Supreme Court dismissed the proceeding for failure to properly to serve the ZBA. The plaintiffs' motion to reargue was denied on January 26, 1993.

## II. THE PLAINTIFFS' CAUSE OF ACTION

The plaintiffs proceed with their fourth amended complaint making a single claim for violation of their equal protection rights pursuant to the Fourteenth Amendment of the United States Constitution. Specifically, the plaintiffs allege in their complaint that the

> [d]efendants, ... intentionally and with malicious or bad faith intent to injure plaintiffs selectively treated plaintiff's [sic] application differently from other similarly situated applicants, including, but not limited to Two Guys Auto Body, Red Lobster Restaurant, Hermac Auto Body, Andy's and Terry's Automotive, Permit Research Co. and Acquisition Corp. and United Auto Body, all of which requested permission to [expand] a non-conforming use.

However, in their May 31, 1995 Rule 3(g) statement, the plaintiffs address only the special use permit granted to United Auto Body to modify that company's non-conforming use. In comparing the United Auto Body's and Central Auto's Collision applications, the plaintiffs acknowledge that in their January 28, 1994 Rule 3(g) statement, they distinguished the United Auto Body's application as "separate and unrelated" because in that case, the proposed expansion would not exceed the 25 percent jurisdictional limitation, a position they now recant.

Specifically, the plaintiffs now contend that,

> [u]pon review of the discovery documentation submitted by defendants, the application submitted by United Auto Body ... was the only case which was similarly situated to plaintiffs' case, in that a request to expand a non-conforming use in excess of 25% was granted.

According to the plaintiffs, in both the United Auto Body and Central Auto Collision applications, the ZBA determined that the remodeling involved would expand a non-conforming use greater than 25 percent, reduce the existing negative effects on the respective neighborhoods, and would not prejudice the value of adjoining properties or increase traffic congestion or traffic hazards by reducing access to fire and police protection. However, despite these similarities, the United Auto Body application was granted while the Central Auto Collision application was denied.

Based on these allegations, the plaintiffs contend that their equal protection rights were violated. They claim that they were treated less favorably than the similarly situated applicant, United Auto Body, in that they were the only applicants to have their application denied as the result of an unprecedented sua sponte reversal of an earlier decision undertaken "purposefully and with a malicious intent to injure." According to the plaintiffs, the emergency meeting of April 24, 1991 is the only example of a situation in which the ZBA "unilaterally, in the absence of a request or application by the aggrieved party, reopened and reversed a prior written determination ... in contravention of village

and state law." The plaintiffs further assert that the emergency meeting was called without proper notice only after the composition of the ZBA favored reopening of the prior ZBA decision of December 18, 1990 granting the plaintiffs' application.

In addition, the plaintiffs argue that Board Member DeLucie should not have been permitted to consider the Central Auto Collision case because he had previously appeared to oppose the application as a witness before the ZBA's original determinations were made. Moreover, the defendants DeLucie and Ronik had not yet taken oaths of office and Ronik was not sufficiently familiar with the underlying facts to decide the matter.

Finally, the plaintiffs assert that the May 14, 1991 hearing was improper because of the pending article 78 proceeding pending the New York Supreme Court and that the ZBA's Findings and Decisions based on that hearing had been wrongfully concealed, no notice of the determination being sent to the plaintiffs, in order to "insulate the determination at issue from judicial review."

Based on these allegations, the plaintiffs seek a total of $3,750,000 in compensatory damages and injunctive relief precluding the ZBA from enforcing its June 23, 1991 decision denying the plaintiffs' application and reinstating the prior decision and repaying the $1300 in fines assessed against the plaintiffs in relation to this matter.

## III. DISCUSSION

### A. *Summary Judgment Standard*

A court may grant summary judgment "only if the evidence, viewed in the light most favorable to the party opposing the motion, presents no genuine issue of material fact," *Cable Science Corp. v. Rochdale Village, Inc.,* 920 F.2d 147, 151 (2d Cir.1990), and the movant is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *see also* Fed.R.Civ.P. 56(c). The Court must, however, resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion. *See Twin Laboratories, Inc. v. Weider Health & Fitness,* 900 F.2d 566, 568 (2d Cir.1990); *Liscio v. Warren,* 901 F.2d 274, 276 (2d Cir.1990); *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).

Once a party moves for summary judgment, in order to avoid the granting of the motion, the non-movant must come forward with specific facts showing that a genuine issue for trial exists. *Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990) (quoting Fed.R.Civ.P. 56(e)); *see National Union Fire Ins. Co. v. Turtur,* 892 F.2d 199, 203 (2d Cir.1989). A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *see Converse v. General Motors Corp.,* 893 F.2d 513, 514 (2d Cir. 1990). However, mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment. *see Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990). If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable. *See Rattner v. Netburn,* 930 F.2d 204 (2d Cir.1991).

Finally, the Court is charged with the function of "issue finding", not "issue resolution." *Eye Assocs., P.C. v. IncomRx Sys. Ltd. Partnership,* 912 F.2d 23, 27 (2d Cir. 1990).

### B. *The Equal Protection Claim*

■ Having set forth the relevant standard, the Court now turns to the substance of the plaintiffs' claims. When addressing whether there has been a violation of the equal protection clause of the Fourteenth Amendment resulting from the selective application of a facially lawful state regulation, there must be a finding that:

(1) the person, compared with others similarly situated, was selectively treated; and
(2) ... such selective treatment was based on impermissible considerations, such as race or religion, intent to inhibit or punish the exercise of constitutional rights, or by a malicious or bad faith intent to injure.

*Crowley v. Courville,* 76 F.3d 47, 52–53 (2d Cir.1996), *aff'g, Crowley v. Board of Zoning Appeals,* 872 F.Supp. 1171 (E.D.N.Y.1995) (Spatt, J.); *see also Zahra v. Town of Southold,* 48 F.3d 674, 683 (2d Cir.1995); *FSK Drug Corp. v. Perales,* 960 F.2d 6, 10 (2d Cir.1992); Recent Second Circuit decisions have been careful to apply each prong of the test separately, finding the failure to satisfy either inquiry fatal to the plaintiff's claim. *See, e.g., Zahra,* 48 F.3d at 684 (recognizing that even where the plaintiff presents evidence of selective treatment, failure to demonstrate malice or bad faith requires dismissal of the claim).

Applying this standard, the defendants now move for summary judgment, arguing that the plaintiffs have failed to establish both requirements necessary to maintain an equal protection claim.

### 1. *Selective treatment*

To establish that they were subject to selective treatment, the plaintiffs must offer evidence that they were similarly situated to other persons but were nevertheless treated differently. *Gagliardi v. Village of Pawling,* 18 F.3d 188, 193 (2d Cir.1994); *Yale Auto Parts, Inc. v. Johnson,* 758 F.2d 54, 61 (2d Cir.1985) (it is essential that the plaintiffs alleges that "the defendants intentionally treated their application differently from other similar applications"). Further elaborating on this standard, the parties agree that:

> [t]he test is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated. Much as in the lawyer's art of distinguishing cases, the "relevant aspects" are those factual elements which determine whether reasoned analogy supports, or demands, a like result. Exact correlation is neither likely or necessary, but the cases must be fair congeners. In other words, apples should be compared to apples.

*The Dartmouth Review v. Dartmouth College,* 889 F.2d 13, 19 (1st Cir.1989).

The defendants contend that the plaintiffs are unable to establish selective treatment because they are not similarly situated to others who were treated differently. In their May 31, 1995 3(g) statement, the plaintiffs contend that their equal protection rights were violated because the ZBA granted United Auto Body, a similarly situated company, a special use permit to expand their facilities in excess of 25 percent as prohibited by law. Although the defendants concede that the United Auto Body expansion was greater than 25 percent for the purposes of this motion only, they deny that United Auto Body and Central Auto Collision are similarly situated. The defendants distinguish the ZBA's United Auto Body and Central Auto Collision decisions on three grounds: (1) the decisions were made over a year apart by a ZBA comprised of substantially different members; (2) the plaintiffs have already admitted in an earlier 3(g) statement that United Auto Body was not similarly situated to Central Auto Collision; and (3) there are other factual distinctions which render any comparison of United Auto Body and Central Auto Collision inappropriate. The Court will address each of these arguments in turn.

### a. *Composition of the ZBA and temporal considerations*

The defendants' first argument is that the ZBA's decision to deny the plaintiffs' application for a special use permit was made by a substantially different Board than that which granted United Auto Body a special use permit more than one year later. On June 23, 1991, when the ZBA denied the plaintiffs' application, the Board was comprised of the following members: (1) Edward DeLucie, (2) Marvin Ronik, (3) Fred San Fanandre, (4) William Florio, and (5) Andrew Crescendo. On August 18, 1992, more than one year later, when the ZBA granted United Auto Body's application for a special use permit, the Board was comprised of: (1) Marvin Ronik, (2) Fred San Fanandre, (3) Kenneth Bond, (4) Jon Brandt, and (5) George Malekian. The defendants reason that because of temporal differences and the change in ZBA membership, they are entitled to summary judgment as a matter of law. The Court disagrees.

█ In support of their argument regarding the lapse of the one year time period between the ZBA's granting United Auto

Body's application and the denial of the plaintiff's application, the defendants cite a line of Minnesota state law cases beginning with *Castle Design & Development Co., Inc. v. City of Lake Elmo*, 396 N.W.2d 578 (Minn. Ct.App.1986) and *In re Johnson*, 404 N.W.2d 298 (Minn.Ct.App.1987). In *Johnson*, the Court held that a plaintiff's equal protection claim based on the denial of a variance to build a home where similar applications had been granted in the past will not survive where the earlier applications were granted a year or more earlier. *Id.* at 301. As a result of this passage of one year, the court concluded that the plaintiff was not similarly situated to the other applicants.

Without addressing the validity or the binding effect of the analysis by the Minnesota State decisions, the Court finds those cases to be distinguishable. In *Johnson* for example, the plaintiffs applied for a variance in August 1986, while the most recent decision by the zoning board to which the plaintiffs compared themselves was rendered in May 1985, over one year earlier. In this case, the defendants admit that the hearings regarding the special use permits for both United Auto Body and Central Auto Collision occurred on the same day, November 13, 1990. As result of these hearings, Central Auto Collision was granted a special use permit and United Auto Body was conditionally granted a special use permit. The fact that the ZBA eventually revisited its decision and reversed its determination in its June 23, 1991 Findings and Decision, while United Auto Body's application was ultimately granted on August 18, 1992, over a year later, does not make the applications any less contemporaneous or the parties less similarly situated. To hold otherwise would allow the ZBA to manipulate the timing of its decisions to defeat potential equal protection claims.

■ Having determined that the one year time period between the ZBA's final decisions with regard to United Auto Body and Central Auto Collision does not defeat the plaintiffs' cause of action, the Court now turns to the defendants' second prong of their first argument, namely that the recomposition of the ZBA between the time the two decisions were issued is sufficient to

preclude the plaintiffs' claim. Specifically, the defendants contend that after the ZBA granted United Auto Body's application, three of the five Board members had been replaced. Defendant DeLucie, who the defendants characterize as the focal point of this lawsuit was not a member of the ZBA at the time United Auto Body's application for the variance was granted. Defendant Ronik, who voted against granting the plaintiff's application also voted against United Auto Body's application. Accordingly, the defendants reason that the two auto body shops were not similarly situated and summary judgment is appropriate. Again, the Court disagrees.

While it is true that recomposition of the ZBA may make it more difficult to establish the discriminatory intent necessary to maintain an equal protection claim, this change in Board membership does not render Central Auto Collision and United Auto Body any less similarly situated. Drawing all reasonable inferences in favor of the plaintiffs, as the Court is obligated to do when considering a motion for summary judgment, both United Auto Body and Central Auto Collision applied for special use permits to increase the use of their land by greater than 25 percent. In each case the extension would "reduce the deleterious effect" of the existing non-conforming use on the immediate neighborhoods, would be no less compatible with the character of these neighborhoods, and would not affect traffic congestion or traffic hazards. The Court finds that these allegations are sufficient to demonstrate that United Auto Body and Central Auto Collision are sufficiently similarly situated so as to raise a triable issue of material fact regarding this issue and the recomposition of the ZBA does not alter this conclusion. Accordingly, the defendants' motion for summary judgment on this ground is denied.

b. *The plaintiffs' two contradictory 3(g) statements*

■ The defendants second argument in support of its summary judgment motion is that although the plaintiffs contend that they are similarly situated to United Auto Body in their May 31, 1995 Rule 3(g) statement, the plaintiffs should be bound by their January

28, 1994 3(g) statement in which they admit that the ZBA decision regarding United Auto Body is a "separate and unrelated case which has no relation to the instant matter." The defendants characterize the assertions contained in the January 28, 1994 3(g) statement as an admission that the Central Auto Collision and United Auto Body are not similarly situated, and as a result, the defendants are entitled to summary judgment as a matter of law.

In support of their position, the defendants rely on *Fodelmesi v. Schepperly*, 1993 WL 127211 (S.D.N.Y. Apr. 20, 1993). In *Fodelmesi*, Judge Wood was faced with the plaintiff's motion for reargument pursuant to Local Rule 3(j). Originally, the Court had granted the defendants' motion for summary judgment in a 1983 action based on the defense of qualified immunity. In that earlier opinion "[t]he court concluded that the[ ] defendants [we]re entitled to qualified immunity because it was not clearly established that it was unconstitutional for police officers to treat a Miranda waiver by an apparently retarded man as valid and to elicit his confession." *Id.* at *1. On the motion for reargument, the plaintiffs contended that the court had overlooked several facts in reaching its decision.

In denying the plaintiff's motion to reargue, the court determined that the plaintiff made apparently inculpatory statements based on his Rule 3(g) statement, in which the plaintiff admitted that a confession was made. However, on the motion to reargue, the plaintiff argued that the existence of the confession remained in dispute and that the defendants could have been lying. In support of this contention, the plaintiff relied on his prior deposition testimony and a reply 3(g) statement in which the plaintiff alternately admitted and denied making the confession.

In rejecting the plaintiff's argument, the Court noted that Local Rule 3(g) provides that material facts set forth in a 3(g) statement are deemed admitted unless controverted by another party. "In this case, plaintiffs were attempting to controvert their own 3(g) statement through a subsequent response to defendants' 3(g) statement. Such tactics are plainly inconsistent with Rule 3(g)." *Id.* at 3. In reaching this conclusion, the Judge Wood noted that "[s]ignificantly, the [subsequent] 3(g) statement was made when plaintiffs had available the transcript . . . upon which they now rely." *Id.* at 2.

Applying the standard set forth by the district court in *Fodelmesi*, a standard with which this Court agrees, the Court now turns to the plaintiffs' two 3(g) statements. In their May 31, 1995 3(g) statement, the plaintiffs allege that United Auto Body and Central Auto Collision are similarly situated entities for the purposes of their equal protection claim. However, in their January 28, 1994 3(g) statement, the plaintiffs stated that:

> Plaintiffs lack sufficient knowledge to determine the truth of defendants statement regarding case no. 1042 [the United Auto Body case] as this is a separate and unrelated case which has no relation to the instant matter. On its face, case no. 1042, differs from the instant matter in that the application in that case proposed that the expansion would not exceed the 25 percent jurisdictional limitation. In the instant case the board was aware, at the onset, that the proposed expansion exceeded [the] 25 percent limitation set forth in the village code, and decided to grant the application pursuant to their discretionary power embodied to them in section 9509.9 of the Village Zoning Code. Moreover, it appears as though case no. 1042 was decided by the [ZBA] after the decision in the instant case was decided and by a completely different set of board members.

Weighing the factors in support of the defendants arguments in this regard, this statement does assert that the United Auto Body case was "separate and unrelated" to the plaintiff's case in that the former's application did not exceed the 25 percent jurisdictional limitation. Moreover, the plaintiffs distinguished the United Auto Body application on the ground that the decision was rendered "after" the ZBA's decision regarding the plaintiffs' application by "a completely different set of board members." In other words, the plaintiffs have apparently reversed their assessment of the case in an

394

effort to revive the only claim that the Court granted them leave to replead.

Nevertheless, the Court finds *Fodelmesi*, distinguishable. As a preliminary matter, the Court notes that the language set forth above, contained in the January 28, 1994 3(g) statement, unlike the language in *Fodelmesi*, is equivocal in nature. The statement begins with the words "[p]laintiffs lack sufficient knowledge to determine the truth of the defendants statements regarding [the United Auto Body] case." This statement indicates that the plaintiffs were somewhat unsure of the nature of the United Auto Body application and decision.

Second, in this case, unlike *Fodelmesi*, in which the Court was faced by two clearly inconsistent presentations of facts, the plaintiffs have not alleged contradictory facts. Rather, they have recharacterized the same underlying facts in order to better support the only claim that the Court did not dismiss with prejudice. By way of illustration, the Court notes that in *Fodelmesi*, the plaintiff initially admitted that he confessed and then later argued that he did not confess. In this case, in the January 28, 1994 3(g) statement, the plaintiffs state that the ZBA decided the United Auto Body case after their decision with respect to this case. In their May 31, 1995 3(g) statement, the plaintiffs do not contradict this statement. Rather, they reassess the matter to now argue that the passage of time does not defeat their claim.

Finally, in *Fodelmesi*, the court noted that "[s]ignificantly, the [original] 3(g) statement was made when the plaintiffs had available the [discovery] upon which they now rely." In the plaintiffs' May 31, 1995 3(g) statement, they allege that they have revised their assessment of the ZBA's decision with regard to United Auto Body because at the time of their January 28, 1994 3(g) statement, they did not have all of the relevant discovery documents. In fact, the original 3(g) statement expressly stated that "the plaintiffs lack sufficient knowledge to determine the truth of the defendants' statement" regarding the United Auto Body case. The plaintiffs contend that the information allegedly pointing to a different conclusion became available at some later date. Accordingly,

the Court finds that this case is distinguishable from the situation presented in *Fodelmesi*, and the plaintiffs will not be conclusively bound by the admissions contained in their January 28, 1994 3(g) statement as characterized by the defendants. However, the Court does not preclude the use of the January 28, 1994 3(g) statement at trial, if determined to be a judicial admission.

#### c. *Other factors*

■ In addition to the arguments discussed above, the defendants further contend that Central Auto Collision and United Auto Body are not similarly situated based on several other distinctions. Specifically, the defendants assert that the plaintiffs auto body repair shop is located in a different area of Valley Stream than United Auto Body. Central Auto Collision is located next to a residential area while United Auto Body is located in an industrial and commercial area. The defendants argue that, as a result of Central Auto Collision's location, it poses health and safety problems to the surrounding residential community which United Auto Body does not. Based on these distinctions, the defendants contend that they are entitled to summary judgment. Once again, the Court disagrees.

The issues presented in this third argument regarding whether the two auto body shops are similarly situated present classic issues of fact. Under these facts and circumstances, whether the locations of different entities are sufficiently analogous when making an equal protection claim is not the sort of decision this Court should make as a matter of law. The two auto body operations were both located in the village of Valley Stream. According to the plaintiffs, they sought similar permits during a similar period. The Court believes that whether, based on these allegations, the two shops can be considered "similarly situated" is a question best left to the trier of fact.

#### 2. *Intent to discriminate*

The defendants' second argument is that the plaintiffs are unable to establish the intent required to maintain their equal protection claim and as a result, they are entitled to summary judgment as a matter of law. As

set forth above, to maintain an equal protection claim, the plaintiffs must establish that: (1) they were subjected to selective treatment, and (2) that the selective treatment was the result of either impermissible considerations such as race or religion or intent to inhibit the exercise of constitutional rights, or that the defendants acted with malicious or bad faith intent to injure. *Crowley,* 76 F.3d at 52–53. Because the plaintiffs have offered no evidence of intent to discriminate based on race, religion or intent to inhibit otherwise constitutionally protected rights, the Court will review the plaintiffs allegations for evidence of malicious intent or bad faith.

In support of their position, the defendants make three arguments. Initially they contend that because the plaintiffs have failed to allege that a simple majority of the ZBA was motivated by discriminatory intent, the required intent cannot be imputed to the entire board. Second, the defendants argue that the Court has already found a rational basis for the ZBA's decision denying the plaintiffs' application and as a result their claim must be dismissed. Finally, the defendants claim that the Board members against whom the plaintiffs have alleged discriminatory intent have acted consistently with respect to all applications to expand non-conforming auto shops by greater than 25 percent and as a result all similarly situated applicants have been treated similarly by those board members.

a. *The plaintiffs have not alleged that a simple majority of the ZBA possessed the necessary intent to support an equal protection claim*

■ To begin with, there is uncontroverted evidence that ZBA member DeLucie lives in the neighborhood next to the plaintiff Central Auto Collision and participated in opposition to the permit prior to his joining the Board. However, the defendants' first argument is that the plaintiffs are unable to establish the required intent because they have not offered any evidence that at least a simple majority of the ZBA acted with a discriminatory purpose. According to the defendants, while few courts have addressed such an issue, those courts have held that such a showing is necessary to maintain an equal protection claim. *See Somers Realty Corp. v. Harding,* 886 F.Supp. 386 (S.D.N.Y.1995); *Flickinger v. School Bd. of Norfolk,* 799 F.Supp. 586 (E.D.Va.1992); *Arroyo Vista Partners v. County of Santa Barbara,* 732 F.Supp. 1046 (C.D.Cal.1990).

In *Arroyo Vista,* the plaintiff brought, among other causes of action, an equal protection claim against a County Board which denied his application for land use permit. In dismissing Arroyo Vista's claims, the district noted that there was no allegation that the plaintiff was discriminated against by "the Board, or at least a majority of the Board." *Arroyo Vista,* 732 F.Supp. at 1055. In *Flickinger,* the court dismissed the plaintiff's equal protection claims in part because the only evidence of discriminatory intent applied to only three of the seven board members, not enough to constitute a simple majority. *Flickinger,* 799 F.Supp. at 594–95. In *Somers,* the court denied the plaintiff's request for injunctive relief after a two day hearing to prevent the enforcement of an Interim Development Law imposing a moratorium on the consideration of development of certain land. The court reasoned in part that while the plaintiff presented evidence of unlawful intent as to one of the council members responsible for the moratorium, he offered no evidence as to the discriminatory intent of the remaining four council members.

Having reviewed the cases cited by the defendants, the Court finds them all distinguishable. In *Flickinger,* the court dismissed the case only after giving the plaintiff the opportunity to present her case at trial. In *Somers,* the court was adjudicating a motion for a preliminary injunction, not a motion for summary judgment dismissing the complaint. While the court in *Arroyo Vista,* the court did dismiss the case, pursuant to Fed.R.Civ.P. 12(b)(6), the plaintiff was given an opportunity to replead. In addition, the Court notes that in *Arroyo Vista,* the plaintiff sued only the County Board and not any of the Board members in their individual or official capacities. In this case however, the plaintiffs have alleged unlawful intent against certain individual ZBA members, who are

separately named in the complaint. Moreover, the Court notes that this "majority-intent" requirement has been criticized as an erroneous interpretation of Supreme Court precedent in dicta by at least one circuit court of appeals. *See Yerardi's Moody Street Restaurant v. Board of Selectmen,* 932 F.2d 89, 91 n. 2 (1st Cir.1991) (criticizing *Arroyo Vista*). Accordingly, in the Court's view, the more appropriate course of action at this juncture is to permit the plaintiffs to proceed to trial and then revisit this issue after the completion of the plaintiffs' case on the appropriate Rule 50 motion. *Cf. Flickinger, supra* (dismissing the case pursuant to Rule 50 motion at the close of the case).

### b. *The Court's previous discussion of the defendants' decision denying the plaintiffs' application*

■ The defendants' second argument is that summary judgment should be granted because this Court has already determined that their decision denying the plaintiffs' application is rationally related to a legitimate government interest. In support of this argument, the defendants look to this Court's earlier decision in this case delivered from the bench on February 4, 1994 dismissing the plaintiffs' First Amendment claims. In the earlier decision, the Court recognized that "there are ample non-political reasons offered by the defendants' affidavits for the [ZBA's] denial of the special permit," including the letter from the prior Village Attorney that the ZBA members had misinterpreted the relevant zoning code provisions, the ZBA's belief that it had exceeded it jurisdiction in its original decision granting the plaintiffs' application, the ZBA's belief that the proposed expansion exceeded 25 percent, and the resulting attendant health and safety problems.

While the Court agrees that these factors all militate against the plaintiffs position, the Court is unwilling to apply its earlier decision addressing the plaintiffs' First Amendment claim to preclude their equal protection claim. As stated above, in order to maintain an equal protection claim, the plaintiffs must establish that they were subject to selective treatment and that, in this case, the subjective treatment was based on malicious intent or bad faith. In order to state a claim for a First Amendment violation, the plaintiffs must establish conduct deserving of First Amendment protection, and that the defendants' actions were motivated by the protected conduct. *See Rattner v. Netburn,* 930 F.2d 204 (2d Cir.1991). The tests for these two different constitutional violations are distinct and the Court never intended that its statements with respect to the First Amendment claim would preclude the plaintiffs' equal protection claim. Accordingly, the defendants' motion for summary judgment based on this Court's prior decision is denied.

In reaching this conclusion the Court recognizes that in support of their argument the defendants cite *LeClair v. Saunders,* 627 F.2d 606 (2d Cir.1980) for the rational relationship test set forth above. In *LeClair,* the Second Circuit reversed the district court's decision denying the defendant's motion for a directed verdict in an equal protection case, where, *after a trial,* the district court determined that the plaintiff had submitted sufficient proof to get to the jury with respect to the defendant's intent. *After reviewing all the evidence,* the Second Circuit reversed finding that there was insufficient proof of intent to support an equal protection claim. In a similar fashion, the Court reiterates its belief that the proper manner to address the issue of intent is to present the issue to the finder of fact, rather than deciding the issue on a motion for summary judgment. *See United States v. Yonkers Bd. of Educ.,* 837 F.2d 1181, 1216–17 (2d Cir.1987), *cert. denied,* 486 U.S. 1055, 108 S.Ct. 2821, 100 L.Ed.2d 922 (1988) (recognizing that the question of intent in an equal protection case belongs to the trier of fact).

### c. *Member DeLucie and Ronik's voting record*

■ The defendants' final argument with regard to intent to discriminate is that they are entitled to summary judgment in their favor because ZBA members DeLucie and Ronik voted consistently with respect to both the United Auto Body and Central Auto Collision applications for special use permits. On March 27, 1991 United Auto Body's application was conditionally approved. Neither DeLucie nor Ronik were members of the

ZBA at this time. When this decision was subsequently reexamined, and it was unclear as to whether United Auto Body's plans complied with the 25 percent limitation, DeLucie and Ronik voted to deny the application. Accordingly, DeLucie and Ronik, the only two members who the defendants contend were charged with acting maliciously, treated the applications of both United Auto Body and Central Auto Collision similarly, namely they voted to deny both applications. As a result of this similar vote by DeLucie and Ronik, the defendants contend that they are entitled to summary judgment dismissing the complaint. This argument is also without merit.

While the Court is mindful of the obstacle that the defendants argument presents to the plaintiffs' case with respect to establishing the intent required to maintain an equal protection claim, nevertheless the issue of intent should be presented to the jury. If after the plaintiffs present their case, a motion for judgment as a matter of law is appropriate pursuant to Fed.R.Civ.P. 50, the Court will address such a motion at that time. Accordingly, the defendants' motion for summary judgment on this ground is denied.

## IV. CONCLUSION

After reviewing the parties' submissions, and hearing oral argument, and for the reasons set forth above, it is hereby

ORDERED, that the defendants' motion for summary judgment dismissing the complaint is denied.

SO ORDERED.