**A.B.C. HOME FURNISHINGS, INC., d/b/a ABC Carpet & Home, Plaintiff,**

v.

**TOWN OF EAST HAMPTON, East Hampton Town Board, Catherine Lester, individually and in her official capacities as Town Supervisor, Thomas Knobel, individually and in his capacity Councilperson, Peter Hammerle, individually and in his capacity Councilperson, Nancy McCaffrey, individually and in her capacity as Councilperson, and Leonard Bernard, individually and in his capacity as Councilperson, Defendants.**

**No. CV 96–3456 (ADS).**

United States District Court, E.D. New York.

May 23, 1997.

Grossman & Birnbaum, Sag Harbor, NY by Stephen Grossman, for Plaintiff.

Cahn Wishod & Lamb, L.L.P., Melville, NY by Richard C. Cahn, Toby Holbreich, for Defendants.

## MEMORANDUM OR DECISION AND ORDER

SPATT, District Judge:

This lawsuit arises from the allegations of the plaintiff, A.B.C. Home Furnishings, Inc., d/b/a ABC Carpet & Home (the "plaintiff" or "ABC") that the defendants, the Town of East Hampton (the "Town"), the East Hampton Town Board (the "Town Board"), the Town Supervisor, Catherine Lester ("Lester"), and the Town Councilpersons, Thomas Knobel ("Knobel"), Peter Hammerle ("Hammerle"), Nancy McCaffrey ("McCaffrey") and Leonard Bernard ("Bernard," collectively the "defendants"), unlawfully revoked a permit necessary to have a sale at a location within the Town of East Hampton, in violation of ABC's constitutional rights. The defendants move pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss the Amended Complaint arguing that the plaintiff has failed to allege a claim upon which relief may be granted.

## I. *Background*

The following facts are taken from the Amended Complaint. ABC is a New York corporation, located in Manhattan, that sells home furnishings. Evan Cole ("Cole") is ABC's President. The Town of East Hampton is a municipality located in Suffolk County. The Town's Board is the Town's legislative body. Catherine Lester is the Town Supervisor and Thomas Knobel, Peter Hammerle, Nancy McCaffrey, and Leonard Bernard are Councilpersons who sit on the Town Board. The non-municipal defendants are sued in their individual and official capacities.

In the spring of 1996, ABC met with representatives of an entity referred to as Podell House, a residential program offering family mediation services and safe temporary shelter for runaway and homeless youths on the East End of Long Island. The purpose of the meeting was to discuss furnishing Podell House with ABC merchandise and a cash gift. Ultimately, it was agreed that Children's House, Inc., Podell House's parent entity would make arrangements for ABC to hold a cocktail party and conduct a three day sale of merchandise at Dune Alpin Field in the Town of East Hampton (the "Event"), and that in exchange ABC would donate a portion of the proceeds of the three day sale to Podell House in an amount guaranteed at $20,000. As part of the agreement, ABC would also donate certain furnishings, with a value of $5,000 to Podell House.

Am. Compl. ¶ 16. The arrangements were made with the aid of LBS Productions ("LBS") which is managed by Linda B. Shapiro. With Shapiro's assistance, Councilperson Knobel was contacted and the Event was scheduled for July 12–14, 1996.

On April 25, 1996, Estelle A. Fox, ABC's Project Director, wrote a letter to Councilperson Knobel reiterating the company's plans to make financial contributions worth a total amount of $25,000, and advising that the advertising budget would be "significant." On May 6, 1996, Shapiro sent Knobel a template for advertising purposes. The defendants did not reply to this correspondence. On May 8, 1996, Shapiro completed the application for a Town permit for the Event. The

application stated the purpose of the event as follows: "To raise funds for Podell House, Friday p.m.—July 12—cocktail party sale—Sat.—Sun. sale."

The Town's printed application form stated:

In consideration for the issuance of the permit sought herein, without charge or fee paid to the Town of East Hampton, the applicant hereby consents and agrees that the Supervisor of the Town of East Hampton, upon the report and recommendation of the Chief of Police of the Town and/or the Acting Chief of Police of the Town, without notice or hearing, may revoke such permit granted to this applicant.

According to the Amended Complaint, the application was then presented to the Town Board. At this time, the defendants were aware that the proposed location for the Event, Dune Alpin Farm, "was located in a residentially zoned part of town." At a Town Board meeting held on May 17, 1996 Councilperson Knobel presented Resolution # 560, which was seconded by Councilperson Bernard, and provides as follows:

WHEREAS, an application has been received from Children's House, Inc. to hold a benefit sale at Dune Alpin Farm for the "Podell House", a not for profit home for runaway children, on July 12, 1996 thru July 14, 1996; and

WHEREAS, the benefit will begin on Friday, July 12th with a cocktail party and an opening sale between the hours of 6:00 p.m. and 10:00 p.m. with the benefit sale to take place also on Saturday, July 13th between the hours of 10:00 a.m. and 8:00 p.m. and Sunday, July 14th between the hours of 8:00 a.m. and 4:00 p.m.;

\*     \*     \*     \*     \*     \*

RESOLVED, pending receipt of the approved tent permit from the EH Town Fire Marshal's Office the application of Children's House, Inc. is hereby approved; and, be further

RESOLVED, the Town Clerk is hereby directed to forward a copy of this resolution to Linda Shapiro, LBS Productions, PO Box 1048, East Hampton, N.Y. 11937; Ken Scott, Superintendent, Recreation &

Parks; David DiSunno, Chief Fire Marshal; Tom Scott, Chief of Police and Glen Stonemetz, EH Village Chief of Police.

Resolution # 560 was unanimously passed. ABC alleges that there were no conditions placed on the Event such as the cost of the goods sold or the profit to be made, or related advertising. In reliance of the ratification of Resolution # 560, the following preparation was undertaken for the Event:

1. A tent was rented and plans to transport it from Rhode Island were made and contracted for;

2. Lodging for ABC employees to work at the event was contracted for, primarily by arranging for approximately 60 hotel rooms;

3. Advertising was disseminated to attract New Yorkers and citizens from other states to the Event;

4. Goods were bought in interstate commerce for sale at the Event;

5. Telecommunications arrangements were made for the site including computer hook-ups for credit card transactions;

6. Trash pick-up and sanitation services were contracted for;

7. Portable toilets and security personnel were contracted for;

8. Valet parking was obtained;

9. Electrical hook-ups worth approximately $20,000 were contracted for;

10. Outdoor furniture was rented;

11. Transportation of merchandise was planned;

12. Labor costs and fees for LBS Productions were incurred; and

13. Fees were paid to LBS for services rendered.

On June 21, 1996, the Town Board passed Resolution # 656 rescheduling the time of the Event on July 12, 1996 from 6:00 p.m.—10:00 p.m. to 1:00 p.m.—8:00 p.m. and affirming Resolution # 560 "in all other respects." On July 3, 1996, a tent permit was issued by the Town's Chief Fire Marshal and advertising was placed in Local newspapers, the New York Times, New York Magazine and Quest Magazine.

At some subsequent unidentified point in time, local merchants began to object to the permits issued for the event. ABC pleads, upon information and belief, that East Hampton Business Alliance President, Sherry Wolfe, wrote a letter to Supervisor Lester opposing "a tent sale under the thin veil of charity" and demanding revocation of the permits. Further, Mariana Van, on behalf of the East Hampton Chamber of Commerce, advised the Town Board that the Chamber was "tired of working to promote local businesses while The Town let in outsiders to reap the benefits." As a result of these complaints Councilperson Knobel began to publicly express his concern that the sale was not being run as a charity event.

In response to these concerns, on June 28, 1996 Evan Cole, ABC's president, wrote a letter to Councilperson Knobel expressing a desire to address any concerns that the Town might have with respect to the Event so that any problems could be resolved amicably. Neither Knobel nor any of the other defendants responded to the letter. Also on June 28, 1996, LBS productions issued a press release stating that a portion of the proceeds of the sale were going to Podell House.

On July 5, 1996, the Town Board passed Resolution # 680 which revoked the permit for the Event on the ground that the Event was being run as a commercial enterprise rather than a charity event and that the land where the sale was to be held was zoned for residential rather than commercial use. Thus, to permit the sale to go forward would be in violation of the Town zoning ordinance.

According to the Amended Complaint, neither ABC nor Children's House, Inc. was given notice of the proposal of Resolution # 680 or an opportunity to respond. Further, the Town Board refused to have any discussion prior to the vote despite the requests of ABC's counsel. Supervisor Lester specifically advised plaintiff's attorney and Cole that the "public input session" would follow the reading and voting on all Town Board resolutions for that day.

ABC further pleads, upon information and belief, that on July 3, 1996, Town Attorney Richard Whelan provided the Town Board with a legal opinion that the plaintiff's sale was, in essence a commercial activity as opposed to a charitable event. Whelan based this conclusion on the fact that the Event was being advertised as a "$10 million" sale, only $25,000 of which was earmarked for the Podell House. As a result, the Town Attorney concluded that the sale would violate the Town's Zoning regulations which the Board has no authority to waive or vary.

As a result of the passage of Resolution # 680, the plaintiff was forced to cancel the Event and place advertising in local and regional newspapers explaining the cancellation to the public. In its original complaint, ABC alleged six causes of action for violations of its constitutional rights to: (1) free speech under the First Amendment; (2) free expression under Article I, section 8 of the New York State Constitution; (3) due process under the Fifth Amendment; (4) proper enforcement of Chapter 39 of the Town Code; (5) free assembly under the First Amendment; and (6) equal protection under the Fourteenth Amendment. By Memorandum of Decision and Order the Court dismissed the original complaint in its entirety granting leave to replead only the equal protection claim. See ABC Home Furnishings, Inc. v. Town of East Hampton, 947 F.Supp. 635 (E.D.N.Y.1996).

An Amended Complaint was filed on January 9, 1997 in which ABC claims that the defendants have violated its equal protection rights by "(1) selectively treating ABC compared with other[ entities] similarly situated, and (2) that such selective treatment was based upon impermissible considerations such as the intent to inhibit or punish the exercise of constitutional rights." In support of its claim, ABC alleges that in the past, the Town has granted public gathering permits at the Dune Alpin Farm location to "Auctions by Kensington, Inc." in June 1992 for an automobile sale and "Hampton Classic, Inc." during successive summers prior to 1977 to hold a horse show and sell related merchandise.

In addition, the Town has allegedly granted public gathering permits for exhibits and sales at other residentially zoned sites as follows:

| | Applicant | Location | Date |
|---|---|---|---|
| 1. | Montauk Point Lions Club | Lions Field Montauk | Aug. 31, 1996 & Sept. 1, 1996 |
| 2. | Montauk Chamber of Commerce | Kirk Parking Lot Montauk | Sept. 7, 1996 & Sept. 8, 1996 |
| 3. | Springs Improvement Society | Ashwagh Hall Springs | May 25, 1996 |
| 4. | Montauk Historical Society | Second House Museum Montauk | July 13, 1996 & July 14, 1996 |
| 5. | Montauk Historical Society | Second House Museum Montauk | Aug. 10, 1996 & Aug. 11, 1996 |
| 6. | Linda Koren | Amagansett School | Dec. 7, 1996 |
| 7. | Montauk Point Lions Club | Lions Field Montauk | Sept. 2, 1995 & Sept. 3, 1995 |
| 8. | Springs Improvement Society | Ashwagh Hall Springs | May 27, 1995 & May 28, 1995 |
| 9. | Montauk Historical Society | Second House Museum Montauk | July 15, 1995 & July 16, 1995 |
| 10. | Montauk Historical Society | Second House Museum Montauk | Aug. 12, 1995 & Aug. 13, 1995 |
| 11. | Montauk Historical Society | Second House Museum Montauk | Sept. 9, 1995 & |

Based on these events, ABC alleges that:

all [d]efendants have acted under the color of state law with reckless indifference to ABC's civil rights by their intentional wrongdoing. Defendants consciously deviated from the procedures established under the Town Code in order to injure ABC and engaged in arbitrary and capricious protectionist legislation without any constitutionally acceptable compelling governmental interest.

Am. Compl. ¶ 55. As a result, ABC seeks an award of monetary damages, attorneys' fees, and a declaratory judgment pursuant to 28 U.S.C. § 2201 stating that its constitutional rights have been violated.

The defendants move to dismiss the Amended Complaint pursuant to Fed. R.Civ.P. 12(b)(6).

## II. *Discussion*

### A. *Rule 12(b)(6) standard*

A complaint is to be dismissed under Fed. R.Civ.P. 12(b)(6) for failure to state a claim, if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *accord Gagliardi v. Village of Pawling*, 18 F.3d 188, 191 (2d Cir.1994); *Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir.1991). In addition, such a motion is addressed solely to the face of a pleading, and "[t]he court's function ... is not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir.1985).

In assessing the sufficiency of a pleading on a motion to dismiss, "all factual allegations in the complaint must be taken as true," *La*

*Bounty v. Adler,* 933 F.2d 121, 123 (2d Cir. 1991), and all reasonable inferences must be construed in favor of the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Bankers Trust Co. v. Rhoades,* 859 F.2d 1096, 1099 (2d Cir.1988), *cert. denied sub nom., Soifer v. Bankers Trust Co.,* 490 U.S. 1007, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1989).

The Court is also mindful that under the modern rules of pleading, the plaintiff need only aver "a short and plain statement showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), and that "[a]ll pleadings shall be so construed as to do substantial justice." Fed.R.Civ.P. 8(f).

### B. *The defendants' motion*

■ The defendants move to dismiss the plaintiff's equal protection claim pursuant to Fed.R.Civ.P. 12(b)(6). As the Court stated in its prior decision, in order to state a cause of action under the equal protection clause, the plaintiff must allege that:

(1) the person, compared with others similarly situated, was selectively treated; and (2) such selective treatment was based on impermissible considerations, such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.

*Crowley v. Courville,* 76 F.3d 47, 52–53 (2d Cir.1996) (citations omitted); *see Zahra v. Town of Southold,* 48 F.3d 674, 683 (2d Cir. 1995); *FSK Drug Corp. v. Perales,* 960 F.2d 6, 10 (2d Cir.1992). Recent Second Circuit decisions have been careful to apply each prong of the test separately, finding the failure to satisfy either inquiry fatal to the plaintiff's claim. *See, e.g., Zahra,* 48 F.3d at 684 (recognizing that even where the plaintiff presents evidence of selective treatment, failure to demonstrate malice or bad faith requires dismissal of the claim).

■ To establish that he was subject to selective treatment, a plaintiff must plead that he was similarly situated to other persons but was nevertheless treated differently. *Gagliardi,* 18 F.3d at 193; *Yale Auto Parts, Inc. v. Johnson,* 758 F.2d 54, 61 (2d Cir.1985) (it is essential that the plaintiffs allege that "the defendants intentionally treated their application differently from other similar applications").

The test is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated. Much as in the lawyer's art of distinguishing cases, the "relevant aspects" are those factual elements which determine whether reasoned analogy supports, or demands, a like result. Exact correlation is neither likely nor necessary, but the cases must be fair congeners. In other words, apples should be compared to apples.

*Dartmouth Review v. Dartmouth College,* 889 F.2d 13, 19 (1st Cir.1989) (applying the standard in the context of a section 1981 claim).

■ Applying these standards, the defendants attack the Amended Complaint on several grounds. Initially, they argue that ABC "fails to allege facts from which it could reasonably be concluded that ABC, a purely commercial enterprise, is in any meaningful sense 'similarly situated' to the non-profit, public service and charitable organizations enumerated...." Def. Mem. of Law at 4. The Court disagrees.

The plaintiff alleges that its permit was revoked several months after it had been granted while other similar entities never suffered from comparable treatment. The Amended Complaint then lists a number of examples in which other entities were granted permits to hold events at the same and other locations within the Town. Taking the allegations contained as true, as the Court is obligated to do at this time, the Court finds that ABC has sufficiently stated that similarly situated entities were treated differently for the purpose of surviving a motion to dismiss. *See Kirschner v. Zoning Bd. of Appeals,* 924 F.Supp. 385, 394 (E.D.N.Y. 1996) (holding that the issue of whether two entities are similarly situated presents a "classic issue of fact" sufficient to defeat the defendants' motion for summary judgment).

■ In reaching this conclusion, the Court notes the defendants' argument that the allegedly similarly situated entities are not comparable to ABC. For example, they con-

tend that the Montauk Historical Society and Montauk Point Lions Club are not-for-profit charitable entities, as opposed to commercial enterprises like ABC. Further, the defendants contend that the plaintiff has been unable to establish that a permit was ever issued for one of the allegedly similar events held at the Dune Alpine Farm, the site of ABC's event. ABC responds to this argument with a separate affidavit filed on May 19, 1997, requesting that the Court take judicial notice of Public Gathering Permits issued to entities referred to as "Guild Hall" and "The Newport Music Festival of the Hamptons." The defendants filed an opposing affidavit on May 21, 1997, which the Court received at 7:00 p.m. that day. These papers are in the nature of sur reply, and sur sur reply, which will not be considered because they were filed without leave of the Court. Nevertheless, as set forth above, the allegations themselves of similarly situated entities being treated differently are sufficient at this point to satisfy the requirements of Fed. R.Civ.P. 12(b)(6).

The defendants further contend that ABC has failed to allege that any disparate treatment was based either "on impermissible considerations, such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Crowley,* 76 F.3d at 52–53. Again the Court disagrees.

At the outset, the Court notes that the Amended Complaint fails to allege that ABC was treated differently based on "invidious distinctions" such as race, religion or ethnicity. Further, the Court has already determined that ABC's claims fail to state an action based on its free speech, free assembly or due process rights. Accordingly, any reference to such rights in the Amended Complaint will not serve as an independent basis for an equal protection claim. The only viable cause of action is based on a "malicious or bad faith intent to injure a person." *Id.*

The defendants maintain that a claim based on bad faith must be dismissed because any allegations of intent are made in "conclusory terms." Def. Mem. of Law at 6. In support of their position, they argue that

exhibits to the Amended Complaint demonstrate that the permit was revoked because:

1. the commercial nature of the proposed event was vastly out of proportion with the charitable benefit;

2. the intent of the Town Board to support and foster Children's House, Inc. and their new building in East Hampton was not intended to provide unlimited scope for commercial activity; and

3. the Town concluded that the proposed sale was a for-profit event inconsistent with the terms of the application for the approved permit.

*Id.*

In the Court's view, the defendants' reasoning is unpersuasive. As the Second Circuit recognized in *United States v. Yonkers Bd. of Educ.,* 837 F.2d 1181, 1216–17 (2d Cir.1987), *cert. denied,* 486 U.S. 1055, 108 S.Ct. 2821, 100 L.Ed.2d 922 (1988), the issue of intent underlying an equal protection claim generally belongs to the trier of fact. Accordingly, the Court declines to dismiss ABC's constitutional claim for failure to sufficiently allege the requisite malicious or bad faith intent to injure, and the defendants' motion to dismiss the Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(6) is denied.

III. *Conclusion*

Having reviewed the parties' submissions, and heard oral argument, and for the reasons set forth above, it is hereby

ORDERED, that the defendants' motion to dismiss the Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(6) is denied.

SO ORDERED.